UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
CASE NO.: 20-cv-60022-SINGHAL/VALLE

IGOR IVANOVICH GRATCHEV,

       Plaintiff,

-vs-

MAXIME IGOROVICH
GRATCHEV,

       Defendant,

_____/

## DEFENDANT'S MOTION TO COMPEL DEPONENT'S RESPONSE TO DEPOSITION QUESTIONS

**COMES NOW** Defendant, Maxime I. Gratchev, by and through the undersigned counsel, and hereby moves this Court to compel the Deponent, Michael Brodigan, Esquire, to respond to deposition questions regarding the formation of Boston Stars Hockey, LLC, and in support states as follows:

I.     Introduction

In the instant case, Igor Gratchev has sued Maxime Gratchev claiming that he was frozen out of his ownership interest in Boston Stars Hockey, LLC., a Massachusetts Limited Liability company. [See DE-58, ¶39, 41, 43, 47]. However, Maxime Gratchev states that Igor Gratchev was never a Member and therefore, did not have an ownership interest in Boston Stars Hockey, LLC ("*Company*" or "*BSH*").  At the inception of the Company, Igor Gratchev, was listed in the corporate records as a *Manager*, which did not convey any ownership interest in the business. Later, he was later removed from that position as he did not execute the Company's Operating

Agreement, at the behest of the sole Member, Maxine Gratchev, as authorized by Massachusetts law.

On October 21, 2021 the defense deposed the attorney that created Boston Stars Hockey, LLC, Michael Brodigan, Esq., for use at trial. However, the deposition was not closed as Mr. Brodigan refused to answer any questions regarding the formation of Boston Stars Hockey, LLC., the identity of the members of BSH, and also regarding his preparation of the Operating Agreement for BSH.  Mr. Brodigan refused to answer as that the Attorney-Client Privilege has been invoked by Igor Gratchev. However, as is shown below, Mr. Igor Gratchev, was not a member of BSH and had no attorney client relationship with Mr. Brodigan for the formation of the company.  Likewise, even if such a privilege existed – which it does not, Mr. Igor Gratchev cannot use the privilege as a shield and a sword, as a matter of law.

Mr. Brodigan had previously represented Maxime Gratchev, Igor Gratchev (individually), and later represented Boston Stars Hockey, LLC. Mr. Brodigan admits to representing BSH since 2015. (See [Ex. A] D. Brodigan, P. 8, L. 17-22).  In 2015, Mr. Brodigan was retained by Maxime Gratchev to create Boston Stars Hockey, LLC., and did so. (See D. Brodigan, P. 9, L. 1-4; P. 10, L. 3-17).  (A copy of the Certificate of Organization is attached as Ex. B). Likewise, Mr. Brodigan created the Certificate of Organization, but in deposition refused to testify as to the identity of the members of BSH. (See Ex. C and D. Brodigan, P. 11, L. 23 through P. 12, L 8).

The day before the deposition, Mr. Brodigan requested that both, Maxime and Igor Gratchev, sign a waiver of attorney-client privilege.  A proposed waiver form was provided to the undersigned by the deponent during the late afternoon of October 20th. (See Ex. D). The undersigned disputed that any such privilege applied, but in order to facilitate the deposition, the

document was signed by Maxime Gratchev, and returned to Mr. Brodigan with instructions to hold the document in escrow until fully signed. (See Ex. E) The document was never signed by Mr. Igor Gratchev or returned to Mr. Brodigan.

At the deposition, when Mr. Brodigan was asked who was/were the member(s) of BSH when he created the company, Mr. Beagle, the attorney for Igor Gratchev raised a claim of attorney client privilege and did not allow Mr. Brodigan to answer questions regarding the member(s) of BSH. (See D. Brodigan, P. 12, L. 4-8). Again, when Mr. Brodigan was asked as to the creation of the Operating Agreement of BSH, he again was prohibited from answering the question by the Plaintiff's counsel. (See D. Brodigan, P. 17, L. 1 - P. 18, L. 15) In addition, Mr. Brodigan refused to answer questions regarding the settlement documents of a civil dispute between Dimitry Borshchev and Igor Gratchev, regarding the purchase and ownership of a "highly sophisticated hockey treadmill" mentioned in the complaint. See DE-58 ¶58. Igor Gratchev claimed to the owner of the treadmill in the verified Amended Complaint, but these documents actually show that Igor Gratchev defaulted on the payment arrangement for the machine and the debt was actually paid by Maxime Gratchev, through his business, BSH.

II.     Argument

i.      No Attorney/Client Relationship

Federal common law applies to attorney-client privilege claims (or defenses) arising under federal law, Willy v. Admin. Review Bd., 423 F.3d 483, 495 (5th Cir. 2005), whereas a state's evidentiary privilege applies in diversity cases, Dunn v. Wash. Cty. Hosp., 429 F.3d 689, 693 (7th Cir. 2005). See Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A., 519 F. Supp. 3d 1184, 1196 (S.D. Fla. 2021). This case is based on diversity jurisdiction,

so, Massachusetts state law applies to the attorney-client relationship.[1] "In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery." FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000). Therefore, the burden is squarely upon the Plaintiff, who invoked the privilege on behalf of Igor Gratchev.

Here, there was never an attorney client relationship between Igor Gratchev and Michael Brodigan, regarding the creation of Boston Stars Hockey, LLC.[2] The relationship was between Maxime Gratchev and Michael Brodigan, Esq., which then became a privilege between BSH and Mr. Brodigan, once the Company was created on June 2 2015. (See Certificate of Organization, Ex. B). In sum, a former Manager, Igor Gratchev, does not have standing to raise a claim of privilege on behalf of a company, least of all for pre-formation communications with an attorney hired by Maxime Gratchev.

As stated in In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003):

> The attorney-client privilege is well-established and its rationale straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues. See *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Still, the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.),* 274 F.3d 563, 571 (1st Cir.2001). In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth. See *United States v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

---

[1] Mr. Brodigan is a Massachusetts attorney and was consulted by Max Gratchev, also a resident of Massachusetts.

[2] Mr. Brodigan previously represented Igor Gratchev in defense of a civil claim by Dmitry Borshchev for an unpaid treadmill.

4

> The dimensions of the privilege itself are reasonably well honed. The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice. See *Bollin*, 264 F.3d at 412; see also 8 *John Henry Wigmore, Evidence* § 2292, at 554 (John T. McNaughton ed. 1961). The idea that the attorney-client privilege may be waived is a direct outgrowth of this well-established construction.

Massachusetts has adopted "*the entity is the Client*" approach. See Mooney v. Diversified Bus. Commc'ns, No. SUCV20163726BLS2, 2017 WL 4172592, at *3 (Mass. Super. July 24, 2017).[3] Under this approach, "despite the fact that a corporation can only act through individuals, officers and directors are not properly viewed as joint, independent clients of corporate counsel; the corporation alone is the client." Id at 3.  As stated in Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421–22, 681 N.E.2d 838, 840–41 (1997):

> When we are faced with questions regarding the attorney-client privilege, we are guided by the following principles. **The privilege is ordinarily strictly construed.** See *Three Juveniles v. Commonwealth*, 390 Mass. 357, 359–360, 455 N.E.2d 1203 (1983), cert. denied sub nom. *Keefe v. Massachusetts*, 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984); *Commonwealth v. O'Brien*, 377 Mass. 772, 775, 388 N.E.2d 658 (1979). The existence of the privilege and the applicability of any exception to the privilege is a question of fact for the judge. *Purcell v. District Attorney for the Suffolk Dist.*, 424 Mass. 109, 113, 676 N.E.2d 436 (1997). The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege. *Id.* at 115, 676 N.E.2d 436. **This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including: (1) the communications were received from a client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were**

---

[3] As opposed to the "collective-corporate-client" approach, where former directors or officers are entitled to privileged communications created during their tenure because both the corporation and the then-current officer or director are viewed as joint clients (or separate parts of the collective corporate client) at the time the communications occurred. See Mooney v. Diversified Bus. Commc'ns, No. SUCV20163726BLS2, 2017 WL 4172592, at *2 (Mass. Super. July 24, 2017)

**made in confidence; and (3) the privilege as to these communications has not been waived**. See *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 604 (D.Mass.1992); *In re Grand Jury Subpoena (Zerendow)*, 925 F.Supp. 849, 855 (D.Mass.1995); *Resolution Trust Corp. v. Dean*, 813 F.Supp. 1426, 1428 (D.Ariz.1993) ("[i]n order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver of the privilege"). See also *M.A. Larkin, Federal Testimonial Privileges* § 2.05 n. 156, at 2–114–2–115 (1997). (*Emphasis ours*)[4]

Here, the consultation regarding the creation of Boston Stars Hockey, LLC, was between Maxime Gratchev and Mr. Brodigan, not Igor Gratchev. This is a material distinction because attorney-client privilege only protects against disclosure of confidential communications made to render legal services. Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 305, 901 N.E.2d 1185 (2009). Therefore, there is no reasonable subjective belief to support the assertion of a privilege by Igor Gratchev and Mike Brodigan, regarding the creation of BSH.

ii.    Implied Waiver of Privilege / Shield – Sword Doctrine

In arguendo, even if the attorney-client privilege were applicable to communications between Igor Gratchev and Mr. Brodigan (regarding the creation of Boston Stars Hockey, LLC), such privilege would be waived because Igor Gratchev has affirmatively placed his *alleged* ownership interest in BSH and alleged membership in the business at issue.

---

[4] See also Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641, 643 (S.D. Fla. 2007): In *Pitney–Bowes* the Court, recognizing that the attorney-client privilege was intended as a shield and not a sword, held that the attorney-client privilege is waived where the asserting party injects the very issue which requires testimony from his attorney. In so ruling the Court cited *Laughner* v. U.S., 373 F.2d 326, 327 (5th Cir.1967), in which the Court opined that the "privilege is not an inviolable seal upon the attorney's lips" and, in fact, must be overridden if the application of the privilege would serve to eliminate the one source of evidence likely to contradict the client's allegations. Id.; accord *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1419–1420 (11th Cir.1994)("Selective disclosure for tactical purposes waives the privilege.")(quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982)).

In this case, the Plaintiff alleges that he was a "Member" of Boston Stars Hockey, LLC, aside from being a "Manager." [See DE-58, ¶39, 41]. It is clear that a party may waive the attorney-client or work product privilege by affirmatively placing that privileged information at issue in the action. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp), 348 F.3d 16, 24 (1st Cir. 2003) ("*In re Keeper*"). In defining the at-issue doctrine, the First Circuit advised that:

> The courts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information would have been unfair to the opposing party. *Id.* (internal quotation marks omitted) (citing 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.41[1]); see also *Columbia Data Products, Inc. v. Autonomy Corp.*, CIV.A. 11-12077-NMG, 2012 WL 6212898, at *16 (D. Mass Dec. 12, 2012) (recognizing a waiver may occur when "a party takes a position in a case that places at issue the information sought to be protected from disclosure.").

The at-issue doctrine seeks to prevent a litigant from using privilege as a sword and a shield. In re Keeper, 348 F.3d at 24 (stating that without this rule, "the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."); see also Rowe v. Liberty Mut. Grp., Inc., 11-CV-366-JL, 2013 WL 4042388, at *3 (D.N.H. Aug. 8, 2013) ("[I]t is well settled that 'a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.' ") (citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41[1], at 503-114-115 (2d ed. 1997 & 2013 supp.). This doctrine is equally applicable to a plaintiff. As the First Circuit in Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988) held that:

> In a civil damages action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.
> .

Whether a party has placed privileged material at issue -- thus, waiving the privilege -- is a fact-specific inquiry. In re Keeper, 348 F.3d at 23. But generally, courts have held that a party's reliance on privileged communications to support its position on a contested issue effectuates a waiver of all documents related to the subject matter of those privileged communications. AMCA Int'l Corp. v. Phipard, 107 F.R.D. 39, 42-44 (D. Mass. 1985). Likewise, in Rivera v. Kmart Corp., 190 F.R.D. 298, 304 (D.P.R. 2000), that court also held that:

> A litigant cannot use the attorney-client privilege as both a "sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." Frontier Refining, Inc. v. Gorman–Rupp Co., Inc., 136 F.3d 695, 704 (10th Cir.1998).

By virtue of the foregoing, Igor Gratchev cannot claim that he was a 'member' of the limited liability company, dispute the existence of corporate documents like the Operating Agreement, and then raise attorney client privilege to avoid Max Gratchev from inquiring of the attorney whom he hired to create the business entity and the document itself. The invocation of the attorney-client privilege by Igor Gratchev is improper, as he himself raised the issue at hand.

Equally, Igor Gratchev alleges that in the Second Amended Complaint, that Max Gratchev appropriated a "highly sophisticated hockey treadmill" from Igor Gratchev and converted it to BSH. See DE-58 ¶58. This treadmill was in fact purchased by Maxime Gratchev when he, through his business, BSH, paid the remaining balance of $18,000 to the original owner of the treadmill, Dmitry Borshchev. Mr. Borshchev claimed that Igor Gratchev had defrauded

him out of the treadmill and was going to sue Mr. Gratchev. Mr. Gratchev entered into a settlement agreement with the attorneys for Mr. Borschchev, Goldman & Pease, LLC., through Mr. Brodigan. When, Igor Gratchev failed to make all of the required payments, Maxime Gratchev – through his business, BSH, paid the remaining sum and purchased the machine. Hence, the allegations of Igor Gratchev in the verified Amended Complaint are false.

When Mr. Brodigan was asked about a certain Settlement Agreement he entered into with Mr. Borschchev, he refused to answer the questions, on the basis of attorney-client privilege. (See D. Brodigan, P. 18, L. 4 through P. 20, L. 7). The purpose was to locate and present a fully signed copy of the agreement. Mr. Brodigan would not even identify the document. Here, the document was not privileged, as it was prepared by and presumptively returned to a third party, Goldman & Pease, LLC, when performed in part by Igor Gratchev. In addition, the document contains no confidentiality provision whatsoever.[5]

The work-product privilege encompasses "work done by an attorney in anticipation of ... litigation from disclosure to the opposing party." In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 574 (1st Cir. 2001). Maxime Gratchev was not the opposing party in that matter involving Mr. Brashchev. Furthermore, as stated in United States v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976):

> **Thus courts have refused to apply the privilege to information that the client intends his attorney to impart to others**, (*internal citations omitted*) or to communications made in the presence of

---

[5] As stated in RFF Fam. P'ship, LP v. Burns & Levinson, LLP, No. CIV.A. 12-2234-BLS1, 2013 WL 7855976, at *6 (Mass. Super. Oct. 15, 2013): "Old Republic's brief argues at some length, and mistakenly, that settlement negotiations "have their own privilege." As a rule of evidence, settlement negotiations are "not admissible to prove liability for, invalidity of, or amount of the claim or any other claim," Mass. Guide to Evidence § 408; Morea v. Cosco, Inc., 422 Mass. 601, 603–604 (1996), but may be offered for another purpose. Unless such negotiations occur in a mediation before a duly qualified and credentialed mediator, see G.L. c. 233, § 23C, there is no privilege preventing their discovery.

third parties (*internal citations omitted*). (See also <u>Refuse & Env't Sys., Inc. v. Indus. Servs. of Am.</u>, 120 F.R.D. 8, 10–11 (D. Mass. 1988)

Mr. Brodigan was then shown another document, a notice of default on behalf of Mr. Borshchev, dated January 25, 2016 and issued by Goldman & Pease, LLC. The deponent again refused to answer any questions on the basis of the same privilege. (See D. Brodigan, P. 20, L. 8-17).  As stated in <u>Att'y Gen. v. Facebook, Inc.</u>, 487 Mass. 109, 122–23, 164 N.E.3d 873, 886 (2021):

> In balancing these competing concerns and determining whether the privilege applies, we focus on the distinctions between attorney-client communications and underlying facts. As we explained in *Chambers v. Gold Medal Bakery, Inc.*, 464 Mass. 383, 392, 983 N.E.2d 683 (2013):
>> "[The distinction between communications and underlying facts] is crucial because attorney-client privilege only protects against disclosure of confidential communications made to render legal services. [Comcast, 453 Mass. at 305, 901 N.E.2d 1185]. **It does not immunize underlying facts available from another source from discovery just because a client disclosed the facts to an attorney**. See M.S. Brodin & M. Avery, Massachusetts Evidence § 5.4.4 (8th ed. 2007 & Supp. 2013), quoting Upjohn Co. v. United States, 449 U.S. 383, 395-396 [101 S.Ct. 677, 66 L.Ed.2d 584] (1981) [(Upjohn)] ('A fact is one thing and a communication concerning that fact is an entirely different thing')."
>
> In *Upjohn*, supra, the United States Supreme Court explained this distinction:
>> "**The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney: '[T]he protection of the privilege extends only to communications and not to facts**...." (*Emphasis ours*)

**WHEREFORE**, the defense requests that this motion be, in all respects, granted. That all claims of privileged by deemed overruled and the deponent be compelled to respond to the topics raised in deposition. Should the deponent or that Igor Gratchev still refuse the deponent form

testifying, then dismiss all claims regarding any rights arising from or relating to Boston Stars Hockey, LLC. If the Plaintiff attempts to meet the standard in <u>Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda)</u>, then the defense requests the ability to reply to such arguments.

<u>CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION</u>

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but have not been unable to resolve the issues.

Respectfully Submitted,

MKRS LAW, PL
Attorneys for Defendant,
4000 Ponce de Leon Blvd, Suite 470
Coral Gables, FL 33146
Tel.    (305) 446-5228
Fax.    (305) 446-7110

By:    */s/ Sergio R. Casiano, Jr.*
       Sergio R. Casiano, Jr.,
       Fla. Bar No.: 457302
       sergioc@mkrs.com

**CERTIFICATE OF SERVICE**

I hereby certify that the on 3rd day of November 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court Southern District of Florida by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>Service List</u>

James W. Beagle, Esq.                    (*Attorney for Plaintiff*)
James Beagle, P.A.
12 SE 7th Street, Suite 704

11

Fort Lauderdale, FL 33301
jb@beagleesq.com

By: */s/ Sergio R. Casiano, Jr.*
   Sergio R. Casiano, Jr.,
   Fla. Bar No.: 457302
   sergioc@mkrs.com