UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-60022-CIV SINGHAL/VALLE

IGOR IVANOVICH GRATCHEV,

      Plaintiff,

v.

MAXIME IGOROVICH GRATCHEV,

      Defendant.

_____/

### PLAINTIFF'S APPEAL from MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER on DISCOVERY (DE [131]) and incorporated memorandum of law

Pursuant to Local Magistrate Judge Rule 4(a)(1), Plaintiff IGOR IVANOVICH GRATCHEV (Igor) respectfully submits this Appeal from the Honorable Magistrate Judge's Non-Dispositive Order (DE [131]) entered on Oct. 25, 2021, granting in part (DE [118]) Defendant's Motion to Quash Subpoenas and Motion for Protective Order (the "Motion"), and incorporates his memorandum of law.

*The inherent difficulty in appealing magistrate judges' discovery orders, and the compelling need for the instant appeal*

Plaintiff Igor and his undersigned counsel acknowledge that district judges may not modify or set aside magistrate judges' discovery orders unless they are "clearly erroneous or contrary to law." The undersigned counsel undertakes the daunting task of establishing precisely that, after due consideration not only of the facts recited by the parties, and the case law, but also the effect

of the subject Order on the presentation of Plaintiff's case at trial.

In the course of responding to a Request for Production of Documents, Plaintiff Igor has explained that "Plaintiff Igor and Defendant Max saw each other so consistently during the years of operation of Boston Stars, LLC and Boston Stars Hockey, LLC that . . . written communications were superfluous." Therefore, those relevant documents that do exist, and the testimony of third-party witnesses, are indispensable to Plaintiff's case, to the point of potentially determining the outcome.

### The recent death of Antonina Gratcheva, mother of Plaintiff Igor

Antonina Gratcheva, mother of Plaintiff Igor and grandmother of Defendant Max, recently passed at the age of 85, of complications of Covid-19. Filed herewith as Exhibit 1 is her death certificate, showing her demise on Nov. 1, 2021.

This event complicates the presentation of evidence related to her experience and actions with regard to key transactions and assets at issue herein. As stated in her May 25, 2020 Affidavit (translated from Russian to English) filed herein as a composite exhibit (DE [58-2]),

> 2.      I have personal knowledge of the facts set forth in this Affidavit.
> . . .
> 5.      On or about January 13, 2005, Igor Gratchev at his own expense purchased apartment no. 87 at 34 Oktyabrskaya Street in the city of Novosibirsk, Russia, and caused same to be titled in my name. (At the time, U.S. citizens were not allowed to directly own real property in Russia.) *See* the Extract from the Unified State Register of Immovable Property, the Hague Apostille authenticating same, and the English translation thereof, attached hereto and incorporated herein (hereinafter the "Title Abstract"). At the time in 2005, Maxime was 16 years old.
> 6.      On or about October 4, 2007, I transferred the Novosibirsk apartment to Igor as titleholder, as the Russian government newly permitted. *See* the Title Abstract attached hereto.
> 7.      In July 2012, Maxime arrived in Novosibirsk to play for the HC Sibir professional hockey team. . . .
> 8.      When Maxime came into the apartment, he immediately told me that I should sell it. I told Maxime that it was not mine to sell, because it belonged to Igor.
> . . .

10.     After a while, it became a topic of discussion mostly between Igor and Maxime.  I was only going to do what Igor told me to do.

11.     Eventually, Igor told me to sell the apartment and send the money to the United States so that Igor could buy a house that his entire family could come and enjoy.

. . .

13.     In order for me to sell his apartment, Igor transferred title back to me on or about September 20, 2013.  *See* the Title Abstract attached hereto.  Twelve (12) days later, on or about October 2, 2013, I sold the Novosibirsk apartment to the Morenkov family, which is no relation to the Gratchev family.  *See* the Title Abstract attached hereto.

14.     On Igor's instructions, on Oct. 3, 2013, I transmitted the proceeds from the sale of the Novosibirsk apartment in the sum of US$177,973.00 to the Bank of America account of Maxime in the United States.  It was agreed among Igor, Maxime and me that Maxime would in turn transmit the money in contribution for Igor's purchase of the Silver Lakes home.

15.     As Igor, Maxime, and I all agreed, the money that I transmitted to Maxime was a loan only from Igor, and Maxime could do one of two things within five (5) years:  either repay the full amount of US$420,000 that was the purchase price of the home (with the US$177,973.00 paid to me), or transfer title of the Silver Lakes home to Igor.  It did not matter to Igor or me which Maxime would choose to do, but he had to do one or the other.  This was not put in writing, because it was a family decision.

. . .

17.     I have never in my life given Maxime a gift of money, including the proceeds from the sale of Igor's Novosibirsk apartment.

. . .

19.     About two (2) years ago, in or about 2018, Maxime called me from the United States.  He tried to make me agree that the US$177,973.00 that I had sent him in 2013 was a gift, so he would not have to pay it back.  I told Maxime that what he was trying to do was against God, ridiculous and cruel.

. . .

21.     Right up until the date that I sign this affidavit, Maxime has paid nothing back on the loan of US$177,973.00 that I transmitted to him in 2013.

On Oct. 18, 2021, the undersigned counsel for Plaintiff Igor emailed counsel for Max,

initiating a prefiling conference as follows:

Antonina Gratchev will be traveling to Uzbekistan for her deposition to be taken as soon as her health allows.  This will be mid-November.  The Court ordered all discovery to be completed by Nov. 4th, 2021, so I will move for leave to take the deposition after that date.  Will you object?

Igor's mother died 13 days later.

It is now incumbent on Plaintiff to seek alternative methods of adducing relevant evidence on this subject matter.

This is recited not merely to inform this honorable Court of Ms. Gratcheva's death, but also to assure this honorable Court that Igor seeks this second appeal of a discovery ruling only in utmost good faith, and in view of the necessities of the instant litigation.  It is respectfully submitted that the crucial nature of Elisabeth Colbath-Czech, Esq.'s testimony, and of the documents in her possession, is established hereinbelow, as it was in Plaintiff's Verified Response in Opposition (DE [122]) to the subject Motion to Quash.

### *The bases of the Honorable Magistrate Judge's ruling*

The Honorable Magistrate Judge clearly and instructively provided her reasoning in the Order under appeal.  Plaintiff Igor and his undersigned counsel thank her for that courtesy, and directly address the points made therein with appropriate reference to his Verified Response in Opposition (DE [122]) to the subject Motion to Quash, so as to establish that new arguments are not presented herein.

For all purposes, Plaintiff incorporates the original arguments and citations of the subject Response herein.

**1.  Ms. Colbath cannot be treated the same as counsel of record.**

At the time the subject subpoenas were served on Ms. Colbath, Plaintiff had had no indication that she had a hand in Defendant's litigation effort.  As stated in Plaintiff's Response,

> **I.  Attorney Colbath first announced that she was active behind-the-scenes in the instant action only two days before the instant Response was filed**
> On Sept. 13, 2021, Defendant MAX filed the "Declaration of Elisabeth Colbath, Esquire in Support of Defendant's Motion for Protective Order" (DE [121]).  Despite numerous attempts to communicate with Ms. Colbath over the last nine (9) months, this is the first time that she asserted any of the [quoted factors

asserting activity as Defendant's counselor].

Response, pages 2, 3.

> The case quoted by Defendant MAX is distinguishable from the situation at hand.  Ms. Colbath is not counsel of record in any of the three (3) actions she mentions.  In contrast, *Axiom Worldwide, Inc., v. HTRD Group Hong Kong*, 2013 WL 230241 (M.D. Fla. 2013) disapproved the deposition of *counsel of record*.

*Id.*, page 6.

### 2.  Plaintiff's Response argued the inapplicability of *Axiom.*

Because the Defendant's subject Motion to Quash and subsequent Reply expressly *and exclusively* relied on the *Axiom Worldwide, Inc., v. HTRD Group Hong Kong*, 2013 WL 230241 (M.D. Fla. 2013), (DE [118]) page 6;  (DE [123]) page 6.   Plaintiff distinguished and refuted *Axiom* as neither controlling nor persuasive authority.  Response, page 6, as quoted in the foregoing section hereof.  Plaintiff is compelled by the standards that must be applied in the instant Appeal to observe that the Order's reliance on *Axiom* is contrary to law as applied to the undisputed facts. The undersigned further represents that his pre-Response research uncovered no case authority, binding or otherwise, that supports application of the *Axiom* standards to a case where the attorney-deponent in question is not only not counsel of record, but also, the intended scope of inquiry is exclusive of litigation planning and litigation work product.

### 3.  Since Colbath's activities were concealed (and to date, never "proven" by anything but her Declaration), Plaintiff's objective cannot have been "to harass the attorney."

The Order on appeal quotes the distinguishable *Axiom* case to observe that "the depositions of attorneys *who represent parties in an action* are 'an invitation to harass the attorney and the party, to cause delay, and to disrupt the case.'"  Emphasis added.  Such objectives did not enter the minds of Plaintiff nor his undersigned attorney.  Nonetheless, responding to Defendant's unwarranted reliance on *Axiom*,

IGOR has no intention of inquiring about her efforts regarding the instant action.  Instead, he would like to ask her, among other things, about the "Maxpro Hockey Partnership Agreement" that Ms. Colbath drafted on or about Feb. 12, 2018 [two years prior to the filing of this action], [(DE [122-3])], between **"Igor Gratchev and Maxime Gratchev as the partners and signatories," stating that "[t[he purpose of the Partnership is the joint ownership and control of MaxPro Hockey, Boston Stars Hockey LLC . . ."**

Response, page 5.

**4.     Under oath, Defendant Max denied knowledge of Colbath's activity as his attorney.**

Any privilege belongs to the client.  As quoted in the Response, Defendant Max testified:

```
Q   Who is Elisabeth Colbath Czech?
A   She's an attorney.
Q   For whom is she an attorney?
A   She was an attorney that did a little bit of
work for myself.  But other than that, that's it.
Q   She did work for you?
A   Yes.
0035
Q   Okay.  What types of work?
A   I don't remember.
Q   Was it personal or was it business related?
A   I don't remember.
Q   Was she ever an attorney for Boston Stars
Hockey?
A   I'm unsure.
Q   Was she ever an attorney for MaxPro?
A   I'm unsure.
Q   Was she ever an attorney for Igor?
A   I am unsure.
Q   When did you first meet her?
A   I do not have the dates or I don't even know
the year.
Q   Can you estimate?
A   No, I don't even know.
Q   Is there somebody that you would contact in
order to recall any of that information?
A   No.
```

Vol. I (DE [122-6]) of transcript of deposition of Defendant Maxime Gratchev 34:19 through

35:19.  Defendant cannot assert an attorney / client relationship after testifying that he has no knowledge of same.

**5.      The Colbath-authored "Maxpro Hockey Partnership Agreement" is crucial to the instant action.**

The Order on appeal holds that,

> although Plaintiff seeks to ask attorney Colbath about the "Maxpro Hockey Partnership Agreement," ECF No. [122] at 5, nothing in [122] Plaintiff's response to the Motion, [58] the Second Amended Complaint, or [84] Defendant's Answer and Affirmative Defenses explains why the drafting of that agreement is relevant to the claims and defenses in this case.

It is admirably diligent on the part of the honorable Magistrate to seek confirmation of the relevance of the Partnership Agreement in the pleadings.  However, the undersigned could not have anticipated same, as the Verified Second Amended Complaint (DE [58]) was filed herein on July, 23, 2020, and Plaintiff Igor did not recover the subject Agreement until Aug. 4, 2021, while preparations were underway for Defendant Max's and Ms. Colbath's depositions.  The undersigned counsel had never seen the Agreement before that date, when it was transmitted by means of the redacted email filed herewith as Exhibit 2.

Nonetheless, it is submitted that the Response firmly establishes the factual relevance of the Agreement, and Colbath's testimony thereof, to the instant litigation, accompanied by legal authority:

> [Plaintiff Igor] would like to ask her, among other things, about the "Maxpro Hockey Partnership Agreement" that Ms. Colbath drafted on or about Feb. 12, 2018, [(DE [122-3])], between **"Igor Gratchev and Maxime Gratchev as the partners and signatories," stating that "[t[he purpose of the Partnership is the joint ownership and control of MaxPro Hockey, Boston Stars Hockey LLC . . .**" and which features the following statement:
>> 5. **Capitalization:** The **initial capitalization** of the **Partnership** shall be **existing Boston Stars Hockey program founded and funded by Igor Gratchev** and labor and equity by Maxime Gratchev contributed by each partner such amounts and percentages

set forth next to each Partner's name on Schedule A. . . .

Schedule A itself is composed entirely of the following words written by Ms. Colbath:

**Igor Gratchev**     **Boston Stars Hockey LLC; business development; initial  financial investment**

**Maxime Gratchev**     **Business development; personal time and expertise**

Page 8 of [(DE [122-3])].  Ms. Colbath transmitted this proposed Agreement by email to both Plaintiff IGOR and Defendant MAX on Feb. 12, 2018.

IGOR has the right to seek Ms. Colbath's testimony on matters that are non-privileged (either by their nature or as the result of waiver by disclosure to third parties), and not work product.

Examples where deposition of an attorney is both necessary and appropriate are as follows. The attorney may be a fact witness, such as an actor or a viewer. *Levingston v. Allis-Chalmers Corp.,* 109 F.R.D. 546, 550 (S.D.Miss.1985); *Sullivan v. Stefanik,* 605 F.Supp. 258 (D.Ill.1985) (deposition of assistant district attorney to reconstruct missing preliminary hearing record). . . .

*N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 n. 2 (M.D.N.C. 1987).

. . . in light of the admitted weight of cases finding that the unique character of counsel depositions requires special attention by the courts, we require the plaintiffs to make a preliminary showing of relevance. They have done so. **The plaintiffs have sufficiently alleged Mr. Weitzman's involvement as an actor in and/or witness of three of the events forming a basis for their claims.** Those allegations sufficiently demonstrate that he possesses relevant and material information. Even cases in the *Shelton* line recognize that, **if an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness.** *See, e.g., Bogan v. Northwestern Mutual Life Insurance Co.,* 152 F.R.D. 9, 14 (S.D.N.Y.1993); *West Peninsular,* 132 F.R.D. at 303 n. 3; *Johnston Development Group, Inc. v. Carpenters Local 1578,* 130 F.R.D. 348, 352 (D.N.J.1990); *N.F.A.,* 117 F.R.D. at 85 n. 2.

*Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 382 (S.D. Ind. 1994). [Emphasis added.]

**6. Plaintiff IGOR already has ample documentation of attorney Colbath's waiver of any ostensible attorney/client privilege**

[This section is a verbatim repetition of Section IV of Plaintiff Igor's Response, provided here for the Court's ease of reference.]

Plaintiff IGOR has hundreds of emails that have been transmitted by attorney Colbath, or to her, all dating before the filing of the instant action, any of which can belie the supposition that her relevant activities were guarded secrets kept between herself and MAX. In the interest of brevity, [(DE [122-4]) is an email dated Dec. 15, 2017, in which Ms. Colbath gives a point-by-point list of "items that [she] would begin handling" for an unidentified business – presumably Boston Stars Hockey LLC – **that she sent both to IGOR and to MAX**. They include many items that are not in the realm of attorney / client privilege, but also: "6. I will prepare a legal "bill" for you specifically for the trademarks. I will need copies of each Trademark – MaxPro Jets, Boston Stars and 10 Steps. I hope to begin work on this process next week." There is no distinction in the way that Igor and Max are addressed.

Another email illustrating the point is Ms. Colbath's more recent email dated Jan. 6, 2019, [(DE [122-5]), also addressed to IGOR and MAX alike. The subject was "Income/expense sheets, in which Ms. Colbath goes into considerable detail with her financial recommendations. She "signs" as

**Elisabeth A. Colbath-Czech, Esquire**
**Director of Business and Legal Affairs**
**Boston Stars and MaxPro Jets Hockey**

thereby reflecting that her position was not merely "legal" but as "Director of Business."

Between 2017 and 2019, there were dozens, perhaps a hundred, meetings between Colbath, IGOR and MAX, during which every legal and extralegal aspect of the business of Boston Stars

Hockey LLC was discussed.  These occurred on Tuesdays, Thursdays, Saturdays and Sundays, often in the business's office at Somerville (MA) Rink, and other times at the Sugar & Spice Thai restaurant in Cambridge (MA).

**7.  Attorneys Colbath and Casiano are capable of "defending" the deposition with appropriate objections to the disclosure of attorney-client communications and work product**

[This section is a verbatim repetition of Section VI of Plaintiff Igor's Response, provided here for the Court's ease of reference.]

It should be self-evident that with Ms. Colbath herself being examined, and Defendant MAX's counsel, Mr. Casiano at the ready, there is no danger that attorney-client communications or work product will be disclosed at deposition.  **They will have no difficulty complying with Local Rule 26.1:**

> (f) Invocation of Privilege during Depositions.
> (1) Where a claim of privilege is asserted during a deposition and information is not provided on the basis of such assertion, upon request the attorney or deponent asserting the privilege shall state the specific nature of the privilege being claimed unless divulgence of such information would cause disclosure of privileged information.
> (2) After a claim of privilege has been asserted, unless divulgence of requested information would cause disclosure of privileged information, the attorney or party seeking disclosure shall have reasonable latitude during the deposition to question the witness to establish other relevant information concerning the assertion of the privilege, including questions about the topics set forth in Local Rule 26.1(e)(2)(B)(ii) above.

**8.  Neither the subject Motion nor Reply was verified by Colbath or Max.**

Both Defendant's subject Motion (DE [118]) and Reply to Response to Motion to Quash Subpoenas and Motion for Protective Order (DE [123]) are replete with factual representations, such as "Plaintiff states that he seeks information regarding a proposed partnership between

Maxime Gratchev and Igor Gratchev regarding the ownership and control of Max Pro Hockey. However, the document was never signed and was simply left in draft form." (DE [123]), page 1. Defendant Max failed to establish any material facts – and indeed, would not be able to do so, since **despite his counsel's extensive coaching**, he testified that at deposition that he was unsure whether he had ever seen the MaxPro Hockey Agreement, Max depo II:156:15-18,[1] unsure of whether he received the cover email from attorney Colbath, Max depo II:158:10, **did not remember whether Elisabeth Colbath took it upon herself to prepare such a Partnership Agreement**, Max depo II:161:18, **nor whether he would have asked her to prepare it,** Max depo II:161:22, **nor whether she had asked him to sign such a document,** Max depo II:162:2-13.  Factual material cannot be accomplished by unsubstantiated hearsay rendered by counsel for Defendant.  (In contrast, as expressly promised in Plaintiff's Verified Response, Plaintiff Igor's Verification to the Response was filed as (DE [124-1]).)

WHEREFORE, Plaintiff respectfully requests that the honorable District Court Judge vacate the subject Order (DE [131]) that had granted in part (DE [118]) Defendant's Motion to Quash Subpoenas and Motion for Protective Order.

Dated:  Nov. 8, 2021          Respectfully submitted,
                                                  /S/ James W. Beagle (Fla. Bar no. 521418)
                                                  JB@BeagleEsq.com
                                                  James Beagle, P.A.
                                                  12 SE 7th Street, Suite 704
                                                  Fort Lauderdale, Florida 33301
                                                  Telephone (954) 563-8588
                                                  Telefax (954) 206-5996
                                                  Attorney for Plaintiff IGOR GRATCHEV

---

[1]     Transcript volume II of Max's deposition is filed herewith as Exhibit 3.

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on Nov. 8, 2021 on all counsel or parties of record on the Service List below.

## SERVICE LIST

Sergio R. Casiano, Jr.
sergio@mkrs.com
MKRS Law, PL
201 Alhambra Circle, suite 802
Coral Gables, FL 33134
Telephone: (305) 446-5228
Facsimile: (305) 446-7110
Attorneys for Defendant
    MAXIME GRATCHEV