UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60022-CIV-SINGHAL

IGOR IVANOVICH GRATCHEV,

    Plaintiff,

v.

MAXIME IGOROVICH GRATCHEV,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Verified Motion for Partial Summary Judgment (DE [165]). Plaintiff filed a Verified Response in Opposition (DE [173]) and Defendant filed a Reply (DE [178]). The matter is ripe for review. For the reasons discussed below, the Motion for Partial Summary Judgment is granted in part and denied in part.

    I.    BACKGROUND

This is a dispute between father and son.[1] Plaintiff Igor Ivanovich Gratchev ("Igor") had a long-standing practice of buying and placing property in the name of his son, Maxime

---

[1] The Court refers the litigants to the deposition testimony of Elizabeth Colbath-Czech and again urges the parties to strive for reconciliation:

> A. And Max loved his dad and he never wanted to hurt his dad…. And Mr. Beagle, I apologize, this is very difficult for me on a personal level because it honestly, given what I'm going through on a personal level, it breaks my heart that things are the way they are between Igor and Max. Igor has a grandson that he has never met.
> Q. And why has he never met him?
> A. Because he was born during the course of this litigation. And he has a second grandchild on the way that's due next month. And as a mother, as a parent, it makes me incredibly sad that things are the way they have gone with the two of them. (DE [171], pp 31-32).

Gratchev ("Max").[2] Igor claims he expected to retain control over the property. The parties had a falling out and Max claims that the property belongs to him. The various properties include a home in Florida, a closely held corporation in Massachusetts, a hockey treadmill, and several boats.

The lawsuit arose after Max refused to re-title the assets in his father's name and took actions indicating an intent to sell property that Igor alleges is rightly owned by him. The Second Amended Complaint (DE [58]) alleges breaches of fiduciary duty (Counts I, II, and VII), constructive fraud (Count III), conversion (Count IV), constructive trust (Counts V and IX), unjust enrichment (Counts VI and X), and breach of oral contract (Count XI).[3] Max moves for partial summary judgment.

The structure of Max's Motion for Partial Summary Judgment is somewhat unusual. Although Max seeks summary judgment on several, specified counts, the motion also seems to seek summary judgment on particular factual and legal issues. The Motion for Summary Judgment sets forth the issues as follows:

> ISSUE 1:   Choice of Law Dictates Massachusetts Law Applies for Corporate Matters.
> ISSUE 2:   Igor Gratchev Is Not a Member of Boston Stars Hockey, LLC.
> ISSUE 3:   Igor Gratchev Has No Claim to the Profits or Distribution of Boston Stars Hockey, as He Had No Membership Interest.
> ISSUE 4:   Maxime Gratchev Did Not Owe a Fiduciary Duty to Boston Stars, LLC.
> ISSUE 5:   Counts II, III, and V Are Barred by Florida Statute 725.01.
> ISSUE 6:   Individual and Constructive Fraud Claims
> ISSUE 7:   Assignment of Claim by Chose Does Not Meet Elements of a Contract.

---

[2] Igor alleges this was done as part of "Russian Tradition." The testimony in the record indicates it may have been motivated by tax and divorce planning considerations. (DE [171], pp. 42-43).
[3] Igor voluntarily dismissed Count VIII of the Second Amended Complaint (DE [73]) after the present motion was filed.

      ISSUE 8:     Claims by or through Boston Stars, LLC Are Barred by Statute of Limitations.

      ISSUE 9:     Lack of Standing Regarding Apartment in Russia.

The Court will address the issues as presented in the motion.

## II.    LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[4] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

---

[4] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

III. DISCUSSION

Issue 1: Choice of Law Dictates Massachusetts Law Applies for Corporate Matters

The Court previously conducted a choice of law analysis and held that Massachusetts law applies to claims involving corporate matters. (DE [25]). Plaintiff does not dispute this issue. The Motion for Summary Judgment on Issue 1 is, therefore, denied as moot.

Issue 2: Igor Gratchev Is Not a Member of Boston Stars Hockey, LLC and
Issue 3: Igor Has No Claim to the Profits or Distribution of BSH

Max seeks summary judgment on the issue of Igor's ownership of Boston Stars Hockey, LLC ("BSH") and Igor's right to claim profits or distribution for BSH. The Verified Second Amended Complaint alleges that Igor and Max were 50% owners of Boston Stars Hockey, LLC (DE [58] ¶ 32). Igor states that he gifted a 50% ownership interest and delegated administrative control to Max. (*Id.* ¶¶ 70-74). He alleges that Max took advantage of the trust placed in him and breached his fiduciary duty by freezing him out of BSH in

4

violation of Massachusetts law. *See Donahue v. Rodd Electrotype Co. of New England, Inc.,* 328 N.E.2d 505, 513 (Mass. 1975).

Max argues that Igor had no interest in BSH and, therefore, he had no interest that could have been frozen. Under Massachusetts law, a person may acquire an interest in a limited liability company upon the formation of the company, at the time provided in the operating agreement, or upon consent of all members. Mass. Gen. Laws Ann. ch. 156C, §20(a) and (b). Max has introduced testimony from Michael Brodigan, the attorney who drew up the organizational papers and operating agreement for BSH. (DE [163], Ex. 1). Brodigan testified that Max was always intended to be the sole owner of BSH; he received those instructions from Igor *and* Max. (*Id.* pp. 33-36). The operating agreement for BSH lists Max as the sole member; Max and Igor are listed as managers. (*Id.*) Max signed the operating agreement but Igor did not. (*Id.*).

Igor relies on the allegations of his Verified Second Amended Complaint[5] set forth above. His deposition testimony flatly states that he was always an owner of BSH. (DE [163], Ex 3, pp. 67-78). He also points out in his "Verified Response in Opposition to Motion for Partial Summary Judgment" (DE [173]) that the operating agreement was never signed by him and he never saw the operating agreement until his deposition in August 2022. In addition, Igor notes that BSH paid him seven checks that were labeled "Owner's Draw." (DE [172] ¶ 25). He also states in his Verified Second Amended Complaint that he provided the sole capital contribution to BSH and gifted a 50% share of the ownership interest to Max. (DE [172] ¶ 4).

---

[5] "[A] verified complaint serves as the equivalent of an affidavit for purposes of summary judgment." *Sears v. Roberts,* 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *Barker v. Norman,* 651 F.2d 1107, 1115 (5th Cir. Unit A 1981)).

At the summary judgment stage, "the [court's] function is not … to weigh the evidence." *United States v. Stein,* 881 F.3d 853, 858 (11th Cir. 2018) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). In *Stein,* the en banc court reaffirmed that rule and specifically held that a party's uncorroborated and self-serving testimony is sufficient to defeat summary judgment. *Id.* at 858-59. "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

In light of these instructions from the Eleventh Circuit, the Court concludes that Igor has failed to produce sufficient evidence to raise a genuine dispute of fact as to his ownership interest in BSH. Igor's testimony that he was always a member of BSH is conclusory and blatantly contradicted by the testimony of the lawyer who drafted the articles of incorporation and the operating agreement.[6] Igor has produced no evidence that his status as a member is reflected in the corporate records of BSH, or that Max ever consented to his being a 50% member, or that Max ever assigned or pledged any part of his interest in BSH.[7] Likewise, the notation "Owner's Draw" on seven checks from BSH to Igor does not establish that Igor was a member of BSH under Massachusetts law. Max has submitted an affidavit (DE [177], Ex. 1) in which he testifies that the check notations were made by

---

[6] The MaxPro Hockey Agreement drafted by Elizabeth Colbath and relied upon by Igor has no bearing on this issue. The purported agreement was drafted in 2018 – well after the formation of BSH – and was never signed by Max. Igor's conclusion that the Max Pro Hockey Agreement is evidence of a conspiracy to defraud Igor is unsupported by Ms. Colbath's deposition or any admissible evidence.

[7] The affidavits of Dennis Franczak and Gabrielle Gratchev (DE [171], Ex. 4,5) do not assist Igor in this proof. These witnesses testified that they assumed Max and Igor were partners, but neither testified to any personal knowledge of the corporate owners.

him at the instruction of the company's accountant "in order to avoid any tax liability to Igor Gratchev." The payments to Igor were treated as draws and attributed to Max as corporate distributions. (*Id.*). This structure is consistent with Igor's admitted *modus operandi* – all his assets were placed in Max's name. There is nothing in this record that would establish a supportable inference that Igor was a member of BSH. There is no genuine dispute of material fact as to the ownership interest in BSH; accordingly, Max is entitled to summary judgment on both Issue 2 and Issue 3 (Igor's claims to profits of BSH). As such, summary judgment will be granted in favor of Max on Count I.

ISSUE 4: Maxine Gratchev Did Not Owe a Fiduciary Duty to Boston Stars LLC

The Court has already ruled upon this issue and dismissed Count VII of the Second Amended Complaint. (DE [79]). In addition, Plaintiff voluntarily dismissed Count VIII. The Motion for Partial Summary Judgment on Issue 4 is, therefore, denied as moot.

ISSUE 5: Statute of Frauds

Max moves for summary judgment on those portions of Counts II (Breach of Fiduciary Duty: Misappropriation of Other Real and Personal Property), III (Constructive Fraud), and V (Constructive Trust), that pertain to the Miramar, Florida, home on the ground that the claims are barred by the statute of frauds. Fla. Stat. § 725.01.

The Verified Second Amended Complaint alleges that Igor paid for the home but placed title in Max's name. (DE [58] ¶ 31). The professed reason was to give Max "a head start in life." (DE [58] ¶ 32). Igor used proceeds from his hockey school, Boston Stars, to fund over one-half the purchase price. (DE [58] ¶ 31). The remaining funds came from Max. (DE [58] ¶ 31). Igor contends the funds used by Max were a loan from Max's grandmother and came from the sale of the grandmother's condo in Russia that Igor paid

7

for. (DE [58] ¶ 31).[8] Igor contends that the parties agreed that Max would re-pay the money transferred by his grandmother within 5 years or transfer the property's title to Igor. (DE [58] ¶ 31). Max claims the transfer from his grandmother was a gift for which he paid gift taxes. (DE [165]) p. 6).

Max argues that the arrangement as described by Igor is an agreement for deed that is covered by the statute of frauds. *First Fed. Sav. & Loan Ass'n of Fort Myers v. Fox,* 440 So. 2d 652, 653 (Fla. 2d DCA 1983) ("we hold that an agreement for deed is a transfer of an interest in real estate"). *See* Fla. Stat. § 725.01 ("contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them" must be in writing and signed by the party to be charged). Igor does not dispute that the statute of frauds applies but argues that his performance of the oral agreement takes the agreement out of the statute of frauds.

Max counters that the statute of frauds exception for part performance only applies to actions in equity and that Igor's claims for damages are barred. *See Dwight v. Tobin,* 947 F.2d 455, 459 (11th Cir. 1991) (quoting *Elsberry v. Sexton,* 54 So. 592 (Fla. 1911) ("Part performance of such a contract is a ground of relief in equity only….")). But Igor argues that he has *fully* performed his duties under the agreement: he purchased the house, he maintained the house, he made the loan to Max possible. "Full performance of an agreement takes the agreement outside the Statute of Frauds." *Brodie v. All Corp. of USA,* 876 So. 2d 577, 579 (Fla. 4th DCA 2004). There is a genuine dispute as to whether

---

[8] Igor's testimony on this is corroborated by the affidavit of Antonina Gratcheva (DE [58], Ex. 2). The Court is aware of the death of Ms. Gratcheva and her unavailability for deposition, but offers no ruling on the Notice of Intent to Offer Affidavit of Antonina Gratcheva Into Evidence at Trial under "Residual Exception" of Fed. R. Evid. 807. (DE [192]).

Igor fully performed under the agreement and, therefore, as to whether the Statute of Frauds applies. Summary judgment on the basis of the Statute of Frauds is denied.

ISSUE 6: Individual and Derivative Constructive Fraud Claims

Max seeks summary judgment on Igor's claims for constructive fraud. Count IX is a claim for constructive fraud committed by Max against Boston Stars, LLC (brought under assignment by Igor). Igor contends that Boston Stars paid more than 70% of the cost of a motor yacht, with Max paying the remainder. (DE [58], ¶ 101-104). The boat was titled in Max's name but was maintained and used by Igor. Igor states that Max has listed the boat for sale at a below-market price (DE [58], ¶ 105-06). The Court has already determined that Max did not owe a fiduciary duty to Boston Stars (DE [79]) and Max argues, therefore, that Igor cannot maintain a claim for constructive fraud on behalf of Boston Stars.

"A constructive trust is an equitable remedy available when a confidential relationship has been abused." *Huston v. Brooks,* 646 So. 2d 276, 277 (Fla. 2d DCA 1994). "A confidential relationship is found 'where confidence is reposed by one party and a trust accepted by the other." *Id.* (quoting *Traub v. Traub,* 102 So. 2d 157, 159 (Fla. 2d DCA 1958). Igor's Second Verified Complaint sets forth facts that could arguably support a finding that such a confidential relationship existed between Igor and Max.[9] But Igor has not produced evidence of such a relationship between Boston Stars and Max. And Count IX is Boston Star's claim, not Igor's. Summary judgment, therefore, is granted as to Count IX on the ground of lack of an underlying relationship.

---

[9] Max's argument that the claim in Count IX is barred by the statute of limitations lacks merit. The Second Amended Verified Complaint alleges that the vessel was listed for sale in April 2020. (DE [58], ¶ 106). This action was filed in 2020. The date the statute begins to run is the date of the alleged breach of trust, not the date the property was acquired.

9

Count III alleges constructive fraud with regard to real and personal properties that were purchased either solely by Igor or Igor and Max but titled solely in Max's name.[10] Max argues that this claim fails also because there is no evidence of a confidential or fiduciary relationship. Igor argues that constructive fraud is a remedy available for wrongdoing involving "both technical fiduciary relations and informal relations." *The Florida Bar v. Adorno,* 60 So. 3d 1016, 1027-28 (Fla. 2011) (citing *Quinn v. Phipps,* 113 So. 419, 421 (1927). Even discounting Igor's argument that "Russian tradition" motivated his decision to title his assets in his son's name, as discussed above, Igor has presented sufficient evidence of a father's trust in his son's goodwill to present the issue to a jury. Summary judgment is denied as to Count III.

<u>ISSUE 7: Assignment of Claim by Chose in Action Does not Meet Elements of a Contract</u>

Count X (unjust enrichment)[11] of the Second Amended Verified Complaint (DE [58]) is brought by Igor on a Distribution and Assignment of all assets and choses in action made between Boston Stars LLC and Igor on May 14, 2020. (DE [58], Ex. 9). Max argues the assignment is unenforceable and invalid because (1) Boston Stars was dissolved more than 5 years prior to the assignment and (2) the assignment is an invalid contract because it was not supported by consideration. Igor, the sole member of Boston Stars, testified in deposition that when Boston Stars ceased operations and dissolved, it did not owe Igor any money, nor did Igor owe Boston Stars any money. (DE [163], Ex. 3, p. 57). Max concludes that because Boston Stars did not owe Igor any money when it ceased operations, the assignment is a contract lacking consideration, not a distribution of assets.

---

[10] This Court previously held that Florida law governs Count III. (DE [79]), p.7.
[11] Count IX was also brought by assignment from Boston Stars, but the Court has granted summary judgment on that Count. *See,* Issue 6, *supra.*

Igor argues that Boston Stars' claims against Max are assets of the company and there is no time limit on the distribution of assets. Mass. Gen. Laws Ann. ch. 156C § 70 ("(c) A limited liability company administratively dissolved continues in existence but shall not carry on any business except that necessary to wind up and liquidate its affairs."). According to Igor, the assignment is simply another asset that belonged to Boston Stars.

Max cites *Larabee v. Potvin Lumber Co., Inc.,* 459 N.E.2d 93, 96 (Mass. 1983) for the proposition that an assignment is a contract and, therefore, requires consideration. This Court does not read *Larabee* in quite the same way. In *Larabee,* sellers of real property assigned their chose in action against a lumber company for the lumber company's unauthorized cutting of timber on the property. The issue before the court was whether the plaintiffs' cause of action fell within the scope of the assignment. In considering the issue, the Massachusetts Supreme Court stated, "This assignment is a contract…therefore the words … must be construed in their ordinary sense." *Id.* The court did not say that an assignment must always be granted by contract; Max cites no law that would prevent Boston Stars from distributing to its sole member and assignment of a chose in action for wrongful conduct that occurred *after* Boston Stars ceased operating. Accordingly, the Motion for Partial Summary Judgment will be denied as to Counts IX and X.

ISSUE 8: Statute of Limitations

The parties dispute both the governing statute of limitations and whether the statute of limitations has run. In a diversity case, "the district court applies the forum state's choice-of-law rules." *Chau Kieu Nguyen v. JP Morgan Chase Bank, NA,* 709 F.3d 1342, 1346 (11th Cir. 2013). "Under Florida's choice-of-law rules, the statute of limitations of the state having the most significant relationship to the occurrence and parties applies." *Id.* (citing *Merkle v.*

*Robinson,* 737 So.2d 540, 542 (Fla.1999)). The Court has already ruled that Florida has the most significant relationship to the Miramar, Florida, property (DE [79] pp. 8), and that Massachusetts has the most significant relationship to the claims involving Boston Stars (DE [25], p. 4). Florida's statute of limitations is 3 years; Massachusetts statute of limitations is 4 years. But under either statute, there is at least a genuine dispute of fact as to whether Igor's claims are time-barred.

"A cause of action accrues when the last element constituting the cause of action occurs." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG,* 784 F.3d 771, 781 (11th Cir. 2015) *certified question answered*, 202 So. 3d 859 (Fla. 2016) *opinion after certified question answered* 844 F.3d 944 (11th Cir. 2016) (quoting Fla. Stat. § 95.031(1)). Under Florida law, a claim for fraud, conspiracy or negligence accrues when the plaintiff either knows or should have known that he suffered damages. *Id.* Likewise, under Massachusetts law, the "statute begins to run when the injured party knew or should have known the factual basis for the cause of action." *Fortucci v. RBS Citizens, N.A.,* 784 F. Supp. 2d 85, 89 (D. Mass. 2011). Igor's Verified Second Amended Complaint states that Max's refusal to transfer titles of the real and personal properties occurred in 2018 and 2019. (DE [58] ¶ 58). It was then that Igor's claims accrued. As the case was filed in 2020, none of the claims are time-barred.

ISSUE 9: Lack of Standing Regarding Apartment in Russia

Max seeks summary judgment on Count XI, Breach of Oral Contract, in which Igor seeks to recover from Max the $177,973.00 that Max's grandmother wired to Max as a loan. Igor contends that the money was from the sale of an apartment in Russia that was paid for by Igor but titled in the name of the grandmother. Igor further states that he and

Max agreed that the funds were a loan to Max that Max would repay within 5 years or transfer title to the Miramar, Florida, property to Igor. Thus, Igor contends the proceeds from the sale belonged to him and the loan repayment was for his benefit, not his mother's. These statements are corroborated by the affidavit of Antonina Gratcheva.[12]

Max states that the money was a gift to him from his grandmother and he declared and paid gift taxes on that payment. Nevertheless, Max argues that even taking Igor's version of the facts as true, Igor was at best an incidental or consequential third-party beneficiary to the loan and, therefore, has no standing to enforce the alleged oral contract.

The Court concludes there is a genuine dispute of material fact on the third-party beneficiary theory.

> To establish an action for breach of a third-party beneficiary contract, [the plaintiff] must allege and prove the following four elements: (1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.

*Health v. Westside EKG Assocs.,* 944 So 2d 188, 194-95 (Fla. 2006). Mindful of the admonition that the court's job on summary judgment is not to weigh the evidence, the Court concludes that Igor has presented a material dispute of fact on the issues surrounding the "loan" to Max. Accordingly, summary judgment on Count XI is denied.

---

[12] *But see,* FN. 8, *supra.*

### IV. CONCLUSION

For the reasons discussed above, summary judgment will be granted in part and denied in part. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED.** Summary judgment is granted in favor of Defendant on Counts I and IX of the Verified Second Amended Complaint. The remainder of the Motion for Summary Judgment is denied.r

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 14th day of July 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF